Ranney, J.
This case was elaborately argued, upon the general question of the liability of railroad companies for the destruction of stock running at large, before the case of Kerwhacker v. Cleveand, Columbus and Cincinnati Railroad Co., 3 Ohio St. 172, was decided by this court. The decision in that case has made it unnecessary to examine the general question in this. I fully concurred in the judgment of reversal rendered in that case; but not altogether in the grounds upon which it was placed, or the reasoning by which it was supported. But as my difference related rather to the inapplicability of some of the ^principles invoked, than to their abstract correctness, I did not then deem it necessary to express a separate opinion. I will, however, take this occasion to say, that, in my judgment, the owner of domestic animals, in suffering them to run at large under the limitations expressed in the statute, is in no fault; and that there is, therefore, no room for the application of the doctrine which determines when a party in the wrong, may, nevertheless, recover for injuries arising from the negligence of another.
In other words, the owner has a perfect right to suffer his animals to go at large, without incurring any responsibility to the owners of uninclosed grounds, upon which they may wander. I am aware, that this is flatly opposed to the common-law doctrine upon the subject, and if that rule of the common law was in force in this state, would be entirely inadmissible. But it is not in force; and it is not in force because, in addition to being utterly inconsistent with our legislation, it lacks all the essential requisites that give vitality here to any principle of the common law, and is opposed to the common understanding, habits, and even necessities, of the people of the state.
Indeed, with the strict enforcement of such a rule, the state never could have been settled. The lands were all heavily timbered, and the introduction of domestic animals, from the scarcity of herbage, requiring a wide range for their support, became indispensable before the forests could be removed. It would have been a novel proposition to a hardy pioneer, when he listened in the morning for the bell that indicated where the oxen that hauled together his logs for burning, might be found, to have told him that his cattle were trespassers on every other man’s uninclosed land upon which they might have fed during the night; or that he could plant corn with *433, 434 out inclosing the ground, and sue his neighbor whose cattle had eaten it up.
Nobody, either lawyer or layman, ever thought of such a thing. The practice of letting cattle go at large was considered as a right, treated as a right, and regulated by numerous statutes as *a right. So early as 1792, it was expressly provided, “ That the open woods and uninclosed grounds within the territory, shall be taken and considered as the common pasture or herbage of the citizens thereof, saving to all persons their right of fencing ” (5 Ch. -St-at. 125) ; and although this specific provision has not been continued, the multiplied regulations as to strays, fences, and inclosures, since passed and still in force, and which are referred to in the case I have cited, abundantly show that the general assembly .has always entertained the same opinion.
Bailroad companies have been incorporated with the capacity to acquire lands, and placed under no obligation to fence, as a condition to using them for the purpose of running trains. They hold them as other proprietors do, and if they see fit to leave them unfenced, they can no more treat the intrusion of domestic animals as a trespass than other proprietors can. It has therefore always seemed to me, that suffering cattle to run at large, and running trains upon an unfenced railroad, were each equally lawful — binding the owners of each to submit to the inconveniences and increased hazards of using their property in that manner — but subjecting neither to the imputation of unlawful conduct, so as to give or bar a right of action, when either right had been fairly and reasonably exercised. And that the legal consequence was that each, as against the other, was entitled to require the exercise of reasonable and ordinary care to prevent injury. This I regard as the fair result of our •present legislation. If a change is desirable, it belongs to the general assembly to make it, by either requiring the railroad companies to fence, or prohibiting cattle from running at large; but neither can be done by the judiciary: especially in view of the fact, that tho legislature has repeatedly refused to do either.
This conflicts with no decision made elsewhere. In every case where the owner of cattle has been denied a remedy for their destruction by the - carelessness of railroad agents, the common-law doctrine was in force; and the cattle were held to be trespassers ■*on the uninclosed road. The remedy was denied because the unlawful act of the owner directly contributed to the injury. *435 This maybe a correct conclusion, when the injury has resulted from mere negligence, and still be very far from being correct when no' such unlawful conduct is established.
In this case, we should find no fault with the charge of the court if the ease had depended wholly upon the relative rights and obligations of the owner of the cattle running at large and the railroad company. The court wore right in saying that the facts and circumstances relied upon to show a want of proper care, were for the exclusive consideration of the jury; and if more specific instructions, as to the degree of care required, were wanted, they should have been asked for. - Of still less importance is the criticism, predicated upon the awkward wording of the bill of exceptions, as to the same care being required t© prevent injury to horses as for the safety of passengers. This part of the charge, if it had any application, was in favor of the company; as it made the safety of the passengers the first object of attention, and allowed the destruction of the horses if necessary to that end.
But the company gave evidence tending to prove an obligation resting upon the owner of the land where the horses were pastured to fence it from the railroad track, with which he had failed to comply, and in consequence of the failure, the horses had strayed upon the track. This evidence was, in effect, taken from the jury, and ’they were told that the company would be liable for the negligence of its officers and agents, as though the horses were running at large, or no such obligation had existed. In this, we think, there was error. The company had the right to protect itself against the inconvenience and hazard of using an unfenced road. After devolving the obligation to do this upon the owner of the land, he could not, over the breach of his contract, suffer his animals to go upon the road without being liable for their trespasses. In such case he would be a wrong-doer, *and not entitled to demand the same degree of care as though he did not occupy that position. If the company had succeeded in establishing this fact, they could not have been charged, short of proof of intentional injury, or of that gross carelessness involving a recklessness of consequences which it is somewhat difficult to distinguish from intentional wrong. As the plaintiffs below occupied this ground under the owner, we think they are subjected to the same rule.
The judgment is reversed, and the cause remanded for further proceedings.